# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: CV-08-J-1890-S |
| ) | |
| CHRISTOPHER BAILEY, et al.; ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Pending before the court is Plaintiff Allstate Indemnity Company's motion for summary judgment and brief in support of said motion (doc. 17); Defendant Christopher Bailey's opposition to said motion for summary judgement (doc. 20); and the Plaintiff's reply (doc. 22).  Having considered said motion, the motion for summary judgment be and hereby is **GRANTED**.

Plaintiff filed this action under the Declaratory Judgment Act, 28 U.S.C. §2201, asserting this court has diversity jurisdiction under 28 U.S.C. §1332. (Compl. ¶ 4.)  Plaintiff seeks to have this court declare that the underlying claim presents a single occurrence under the homeowners policy issued to Christopher Jayne's parents such that Allstate owes a single $100,000 bodily injury liability limit for Christopher Bailey's claims in the event the insureds are found liable in

1

the underlying state court action. (Pl.'s Mot. Summ. J. 1.)

## FACTUAL BACKGROUND

The parties do not dispute the following facts and the court adopts them as such:

Richard Jayne owned several firearms that he kept locked in a gun safe in his home. Only he and his wife, Cynthia Jayne, had keys to the safe. Their son, Christopher Jayne ("Jayne"), did not have key access to the locked gun safe, and he was instructed by his father to never open the safe by himself or use the guns by himself. Two days prior to the accident, Jayne removed the key to the gun safe from his mother's key chain so he could target shoot. Neither of Jayne's parents knew that he took the key. Jayne took the gun out of the safe that day in violation of Richard Jayne's house rules. However, Jayne did not shoot the gun or use the key on they day he took the key.

Two days later, on November 11, 2006, Jayne's friend, Christopher Bailey ("Bailey"), and Jayne were talking about guns and an upcoming sponsored hunt. Jayne then opened the gun safe and removed two guns. Jayne's parents were not home, and Jayne told Bailey that his father had given him the key to the gun safe. The boys fired rounds outside, and returned the guns to the safe. Jayne and Bailey continued to talk about hunting, and Jayne removed a .45 pistol from the safe.

Bailey testified that as he stood up from tying his shoe, Jayne said, "Hey Bailey, catch;" he was then struck in the abdomen by the bullet from the .45 pistol. Jayne did not know exactly how the pistol discharged, as he did not have his finger on the trigger or hammer.

Allstate issued a homeowners policy to Richard and Cynthia Jayne, policy no. 915934282. (Ex. 4.)  Plaintiff asserts that under the insurance policy in effect at the time of the accident, liability attaches to only one occurrence – when Jayne accidentally caused the gun to discharge resulting in the gunshot wound to Bailey. (Pl.'s Mot. Summ. J. 7.)  The relevant policy language limits liability coverage to "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and is covered by this part of the policy." (Ex. 4, Policy, p. 19.)  The term "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**." (Ex. 4, Policy, p. 3)(emphasis in original).  Liability coverage under the Jaynes' policy is limited to $100,000 for each occurrence.  Allstate's limit of liability is as follows:

    **4.**    **Our Limits of Liability**

Regardless of the number of insured persons, injured persons, claims,

claimants or policies involved, our total liability under Coverage X - Family Liability Protection for damages resulting from one occurrence will not exceed the limit shown on the Policy Declarations. All bodily injury and property damage resulting from continuous or repeated exposure to the same general conditions is considered the result of one occurrence.

Ex. 4, Policy, p. 23-24. The Plaintiff offered the $100,000 bodily injury liability limit to the underlying plaintiffs (defendants in the present action Christopher Bailey, Melanie Bullock, Barbara Green, and Willie Green) to settle, release and discharge the claim against its insureds, but the underlying plaintiffs did not accept that offer. Rather, Bailey, Bullock, and the Greens contended that there were multiple occurrences as that term is defined by the policy. (Compl. ¶ 13.) According to Allstate, its liability coverage is limited to one occurrence under its policy terms, and therefore moves for summary judgment seeking a declaratory judgment limiting liability to $100,000 in the event of a finding of liability in the underlying suit.

## SUMMARY JUDGMENT STANDARD

Summary judgment is granted appropriately when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Matushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986); *Reeves v. C.H. Robinson*

*Worldwide, Inc.*, 525 F.3d 1139, 1143 (11th Cir. 2008).  The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once the moving party has supported its motion adequately, the burden then shifts to the non-movant to show that summary judgment is improper by coming forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict.  *See Celotex Corp v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable.  *See* Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986).  Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

## LEGAL ANALYSIS

When evaluating a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Vaughan v. Cox,* 343 F.3d 1323, 1328 (11th Cir. 2003). The court must also construe all reasonable doubts about the facts in favor of the non-movant. *Michael Linet, Inc v. Vill. of Wellington, Fla.*, 408 F.3d 757, 761 (11th Cir. 2005). The court should not make factual determinations on summary judgment. *Jones v. American General Life and Acc. Ins. Co.*, 370 F.3d 1065, 1069 n.1 (11th Cir. 2004). With these standards in mind, the court considers the pending motion.

The parties agree that Alabama state law governs the insurance contract in question. (Ex. 4, Policy Endorsement, p. 1; Def. Resp. to Pl.'s Mot. Summ. J. ¶ 22.) The issue presented, then, is whether the Bailey shooting and the events leading up to it constitute more than one occurrence, thus increasing Plaintiff's potential coverage liability. Allstate argues that only one occurrence happened: the accidental discharge of the gun resulting in the gunshot wound to Bailey. (Pl.'s Mot. Summ. J. 7.) Bailey argues that there were potentially five occurrences: (1) the failure by the parents in training their son in proper handling of a gun; (2) the negligent storing of ammunition; (3) the negligence in putting the key on an

accessible key chain, making access to the gun easier; (4) the negligence of having a loaded gun in the house; and (5) the pointing of the gun toward a person and shooting. (Def.'s Resp. to Pl.'s Mot. Summ. J. 8.)

In interpreting the language of an insurance policy, the court must give the words used in the policy their customary and normal meaning, and the court must construe the policy in a manner consistent with the interpretation that an ordinary person would place on the policy's language. *Pritchett v. State Farm Mut. Auto. Ins. Co.*, 834 So. 2d 785, 791 (Ala. Civ. App. 2002). Alabama law also provides that "[t]he issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide.... If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court." *Nationwide Ins. Co. v. Rhodes*, 870 So. 2d 695, 696-97 (Ala. 2003). A court must enforce the insurance policy as written if the terms are unambiguous. *Rogers v. State Farm Fire and Cas. Co.*, 984 So.2d 387, 392 (Ala. 2007)(citing *Safeway Ins. Co. of Alabama v. Herrerra*, 912 So.2d 1140, 1143 (Ala. 2005). If there exists some ambiguity in an insurance contract, that ambiguity will be construed against the drafter. *Hancock v. New York Life Ins. Co.*, 899 F.2d 1131, 1135 (11th Cir. 1990)(referencing *Aetna Life Ins. Co. v. Hare*, 256 So.2d 904, 911 (Ala. 1972). Thus, this Court will determine the ambiguity, if

any, of the Plaintiff's insurance policy with the Defendants, and will enforce the policy as written only if its terms are unambiguous.

The court finds the terms of the policy to be unambiguous. The liability coverage language of the Jaynes' policy limits liability coverage to "*damages* which an *insured person* becomes legally obligated to pay *because of bodily injury* or property damage *arising from an occurrence* to which *this policy applies* and *is covered by this part of the policy*." (Ex. 4, Policy, p. 19)(emphasis added). As applied to the underlying action, the policy liability coverage is limited to *damages* – Bailey's claimed medical expenses – which an *insured person* – the Jaynes – become legally obligated to pay *because of bodily injury* – the bodily injury incurred by Bailey from the gunshot wound – *arising from an occurrence* – Bailey's injuries arose out of and resulted from Christopher Jayne's act of tossing the gun toward Bailey. Having determined the policy to be unambiguous, the Court finds the term "occurrence" and its application to the underlying claim dispositive of the motion currently pending.

"Occurrence" is defined in the policy as "an *accident* including *continuous or repeated exposure* to *substantially the same general harmful conditions* during the policy period, *resulting in bodily injury* or property damage." (Ex. 4, Policy, p. 3.)(emphasis added.) Under the plain policy definition, there was a single

occurrence: there was an *accident* – the gunshot – during the policy period, *resulting in bodily injury* – Jayne's act of tossing the gun toward Bailey resulted in Bailey's bodily injury. Under the plain language of the policy, there is a single occurrence that caused Bailey's injury.

Defendant does posit that a number of negligent acts taken (or not taken) by the Jaynes resulted in Bailey's bodily injury, thus constituting numerous occurrences. However, there was only one action that resulted in Bailey's bodily injury – Jayne's act of tossing the gun toward Bailey, which resulted in the gun discharging. The omission of properly teaching Christopher Jayne gun handling did not *result* in Bailey's bodily injury; were it not for Jayne's actual toss of the gun, Bailey would not have been injured. For this same reason, the remainder of the defendant's posited "occurrences" fail. There is one single occurrence causing injury – the tossing of the gun.

Even beyond the text of the policy, Alabama law governs that there is one single occurrence in the underlying claim. Because the insurance contract was drafted so, the parties agree that it shall be interpreted under Alabama law. (Ex. 4, Policy Endorsement, p. 1.) In the context of insurance and indemnity disputes, Alabama employs a "cause" analysis rather than an "effects" analysis in determining single versus multiple occurrences. As long as the injuries stem from

9

one proximate cause, there is a single occurrence.  *United States Fire Ins. Co v. Safeco Ins. Co.*, 444 So.2d 844, 846 (Ala. 1983).  Thus, the primary inquiry is to ask "[d]id the injuries (damages) stemmed from one proximate cause?"  *Id.  See also St. Paul Fire & Marine Ins. Co. v. Christiansen Marine, Inc.*, 893 So.2d 1124, 1137 (Ala.2004).  Alabama has defined the time of an occurrence "of an accident within the meaning of an indemnity policy ... not [as] the time the wrongful act was committed but [as] the time the complaining party was *actually damaged*."  *United States Fidelity & Guaranty Co. v. Warwick Dev. Co., Inc.*, 446 So. 2d 1021, 1024 (Ala. 1984)(emphasis added).

   Plaintiff argues that there was one proximate cause that led to Bailey's injury: Jayne's action of throwing the gun toward Bailey.  Bailey argues, however, that the negligent actions of Jayne's parents in keeping, regulating, and educating about the guns were each a proximate cause of Bailey's gunshot, thus separating them into separate occurrences.  The four actions (excluding the fifth, which is the actual shooting of the gun) were not proximate causes of Bailey's injuries.  Had Jayne not tossed the gun in Bailey's direction, Bailey would not have incurred his injuries.  As the Alabama Supreme Court clarified in *Fidelity*, the only time there may be an occurrence is when the complaining party is actually damaged. *Fidelity*, 446 So.2d at 1024.  *See also Liberty Mutual Ins. Co. v. Wheelwright Trucking Co.,*

*Inc.*, 851 So.2d 446, 481 (Ala.2002). Although Defendant posits a number of events that they believe to constitute separate occurrences, those were not times when the complaining party was actually injured. The *only* time at which Bailey was actually damaged was when the gun discharged. This single occurrence is in accord with *Fidelity*'s definition of "occurrence." *Id.*

Having considered the foregoing, the court finds the policy to be unambiguous as a matter of law. The court finds there is only one occurrence at issue in this case, and the Plaintiff's liability should be limited so accordingly. The Plaintiff's motion for summary judgment is due to be granted as no genuine issues of material fact remain and the Plaintiff is entitled to a declaratory judgment in its favor limiting its liability to $100,000 as a matter of law, should liability against the Jaynes be found in the underlying action.

**DONE** and **ORDERED** this 24th day of March, 2009.

*[signature]*
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE